**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOUGLAS VAUGHAN, individually and on behalf of all others similarly situated, | Civil Action No.: 21-16013 |
| Plaintiff, | **OPINION** |
| v. |  |
| FEIN, SUCH, KAHN & SHEPARD, P.C., et al., |  |
| Defendants. |  |

**CECCHI, District Judge.**

I.      __INTRODUCTION__

This matter comes before the Court by way of defendant Fein, Such, Kahn & Shepard, P.C.'s ("Defendant") motion to dismiss (ECF No. 5) plaintiff Douglas Vaughan's ("Plaintiff") putative class-action complaint (ECF No. 1), pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff opposed Defendant's motion (ECF No. 7), and Defendant replied (ECF No. 10).  The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Fed. R, Civ. P. 78(b).  For the reasons set forth below, the Court grants Defendant's motion to dismiss and the complaint is dismissed without prejudice.

## II.   <u>BACKGROUND</u>

### a.   <u>Factual Background</u>[1]

This matter arises out of Plaintiff's defaulted loan and security agreement in favor of Greater Alliance Federal Credit Union ("Greater Alliance"), and subsequent debt collection efforts made by Defendant Fein, Such, Kahn & Shepard, P.C. on Greater Alliance's behalf.  Plaintiff alleges that on March 4, 2021 Defendant sent Plaintiff a collection letter (the "Letter") that was misleading and deceptive as to the amount of debt and the identities of the debt collector and creditor, thereby providing a defective written validation notice (a "G notice").  As a result, Plaintiff claims that the Letter violated his rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See generally* ECF No. 1 ("Compl.").

Plaintiff, a New Jersey resident, alleges that sometime prior to March 4, 2021, he incurred a financial obligation to Greater Alliance, which was referred to Defendant for collection.  Compl. ¶¶ 7, 21, 25.  On March 4, 2021, Plaintiff received the Letter from Defendant on behalf of Greater Alliance, which Plaintiff alleges explained that the debt had been transformed into a wage garnishment and provided the G-notice required for first communications from the debt collector. *Id.* ¶¶ 28-30.

Specifically, the one-page Letter is printed on Defendant's letterhead.[2]  ECF No. 1-2.  The Letter's title caption includes the subject ("Re: Plaintiff: GREATER ALLIANCE FEDERAL CREDIT UNION"), the docket number of the default judgment and wage execution order from the Superior Court of New Jersey, the total wage garnishment amount, the credits received through

---

[1] The following facts are accepted as true for the purposes of the instant motion to dismiss.

[2] As Plaintiff attached the Letter to his complaint, the Court may consider its contents at the motion to dismiss stage. *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

March 4, 2021, and the current balance of wage garnishment.  *Id.*  The first paragraph advises that Defendant "now represents the Plaintiff in this matter," and is providing the required consumer notice.  *Id.*

The next paragraph explains that Defendant had reviewed Plaintiff's file, which showed that there was an active wage garnishment that may have resulted in credits not yet reported, but if those credits existed, they would be applied to the consumer's account upon receipt.  *Id.*  It also provides contact information for a representative of Defendant.  *Id.*

The Letter then provides the required G-notice detailing Plaintiff's rights should he wish to dispute the validity of the debt, or any portion thereof.  *Id.*  Finally, the bottom of Letter indicates that the communication is from a debt collector, that it is an attempt to collect a debt, and any information obtained will be used for that purpose.  *Id.*

**b.  <u>Procedural Background</u>**

On August 25, 2021, Plaintiff brought this putative class-action against Defendant and other unnamed defendants in the Superior Court of New Jersey for violations to sections 1692e and 1692g of the FDCPA.  *See generally* Compl.  Specifically, the Complaint alleges that the amount stated as due is false (and thus misleading) because, even though the balance is due to a judgment and "Plaintiff knows that judgments generally accrue interest," the letter does not state that interest is accruing or, conversely, that interest is waived.  *Id.* ¶¶ 32-36.  Additionally, Plaintiff alleges that Defendant's reference to Greater Alliance as "Plaintiff in this matter" instead of as the creditor obscures the identity of the creditor.  *Id.* ¶ 43.  Finally, Plaintiff alleges that the Letter's "generic" references to "the consumer" and "the debt collector" fail to provide clarity as to the parties, and thus Defendant has not clearly communicated Plaintiff's rights to dispute his debt as required under 15 U.S.C. § 1692g.  *Id.* ¶¶ 45-46.  Defendant then filed the instant motion to dismiss

the complaint on November 1, 2021, focusing solely on this Court's jurisdiction and the Plaintiff's Article III standing.  ECF No. 5-1 ("Def. Br.").  Plaintiff opposed the motion (ECF No. 7) ("Pl. Br."), and Defendant replied (ECF No. 10) ("Def. Reply").

## III.   LEGAL STANDARD

### a.   Federal Rule of Civil Procedure 12(b)(1)

A court must grant a motion to dismiss under Rule 12(b)(1) if it lacks subject-matter jurisdiction over the complaint.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and, as a result, a plaintiff must have "standing" to sue.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  Thus, a motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) because standing is a matter of jurisdiction.  *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."  *Constitution Party of Pa v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (alterations in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).  To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court."  *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)), *abrogated on other grounds by Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.   <u>DISCUSSION</u>

Defendant moves to dismiss the Complaint on the ground that Plaintiff lacks Article III standing, as he has failed to establish an injury-in-fact.  *See generally* Def. Br.; Def. Reply. Plaintiff opposed Defendant's motion, arguing that his Complaint has sufficiently alleged concrete intangible harms and actionable informational injuries resulting from Defendant's misleading and incomplete letter. *See generally* Compl.; Pl. Br.

### a.  <u>Article III Standing</u>

Of the three components of standing, at issue here is whether Plaintiff has satisfied the injury-in-fact requirement—that is, whether his asserted injuries are "concrete." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  Defendant argues that any injury alleged by Plaintiff is purely informational and thus lacks the concrete harm required to confer Article III standing after *Transunion*.  Def. Br. at 7-9.  In response, Plaintiff offers multiple theories that he contends establish standing.  First, he argues that misleading information concerning the amount of debt owed or the identities of the creditor and debt collector is a core concern of the FDCPA that confers standing "irrespective of any additional harm suffered by the plaintiff." Pl. Br. at 7.  Relatedly, he argues that the FDCPA provides a substantive right to be free of deceptive debt collection practices, which constitutes a concrete injury even after *Transunion*. *Id.* at 16-21.  Second, Plaintiff argues that the harm alleged here has a common-law analogue in fraud and he has sufficiently pleaded its elements.  *Id.* at 22-25.  Finally, Plaintiff argues that even if he has not established intangible harm, his expenditure of time and money in response to the Letter establishes a tangible injury conferring standing.  *Id.* at 26.  For the reasons discussed below, the Court finds Plaintiff has not established a concrete harm and thus lacks standing.

As an initial matter, the Supreme Court has held that various intangible harms may, under certain circumstances, satisfy the concrete harm requirement of Article III standing.  *Id*. at 2204.  Chief among such harms are those that bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *Id.*  In cases of statutory violations—as here—a court must ensure that the harm is more than just a "bare procedural violation."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Consequently, the Third Circuit has cautioned that the Supreme Court's recent guidance suggests a "thorough discussion of concreteness is necessary in order for a court to determine whether there has been an injury-in-fact."  *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63, 65 (3d Cir. 2016) (citation omitted).

The Supreme Court's recent rulings in *Spokeo* and then *Transunion* have had important implications on the law of standing for statutory violations.  Prior to *Spokeo*, courts in this district examining section 1692e "favor[ed] finding concrete injury under the FDCPA where violations of the statute have been alleged."  *Napolitano v. Ragan & Ragan*, No. 15-2732, 2017 WL 3535025, at *6 (D.N.J. Aug. 17, 2017) (collecting cases).  And after *Spokeo*, FDCPA violations—even those compromising purely informational injuries—continued to be deemed substantive, concrete injuries conferring standing rather than bare procedural violations.  *See, e.g., Rock v. Greenspoon Marder, LLP,* No. 09-3522, 2021 WL 248859, at *4 (D.N.J. Jan. 26, 2021) (Plaintiff's allegation that various components of debt collection letter were misleading amounted to concrete harm); *Rhee v. Client Servs., Inc.,* No. 19-12253, 2020 WL 4188161, at *4 (D.N.J. July 21, 2020) (plaintiff's allegations of a false and misleading letter even without pleading actual confusion sufficient to confer standing).

*Transunion* clarified that *Spokeo* "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

purports to authorize that person to sue to vindicate that right." 141 S. Ct. at 2205 (internal quotations omitted). Accordingly, courts analyzing intangible harms of statutory violations should "ask[] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 2204. After *Transunion*, courts have therefore noted that a concrete injury requires more than just risk of harm but actual "downstream consequences" or "adverse effects." *Sandoval v. Midland Funding, LLC,* No. 18-09396, 2022 WL 2116769, at *5 (D.N.J. June 13, 2022) (rejecting standing because plaintiff could not show concrete harm caused by FDCPA violation); *see also Davis v. Universal Protec. Services*, LLC, 558 F. Supp. 3d 220, 227 (E.D. Pa. 2021) ("*Transunion* raised the bar.").

Applying the lessons of *Spokeo* and *Transunion* together, courts assessing statutory injuries have recently framed the concreteness inquiry as "first, whether the alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than mere injury-in-law." *Rohl v. Prof. Fin. Co., Inc.,* No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022); *see also Barclift v. Keystone Credit Services, LLC*, No. 21-cv-04335, 2022 WL 444267, at *8 (E.D. Pa. Feb. 14, 2022)*; Wolkenfeld v. Portfolio Recovery Associates, LLC*, No. 22-cv-1156, 2022 WL 1124828, at *2-3 (E.D.N.Y. Apr. 14, 2022). This framework aligns with *Transunion*'s guidance that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider," *Transunion*, 141 S. Ct. at 2204, while also acknowledging that in the Third Circuit an "injury-in-fact can be a trifle"—if concrete. *Oh v. Collecto*, *Inc.*, No. 20-01937, 2021 WL 3732881, at *3 n.3 (D.N.J. Aug. 23, 2021) (citing *Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017)).

Turning to the instant case, the Court initially notes that Plaintiff's first argument—that misleading information in a debt collection letter confers standing irrespective of any additional

harm suffered by the plaintiff—fails to account for these recent clarifications on the concreteness requirement, as discussed above.  Similarly, Plaintiff's related argument that the FDCPA provides a substantive right that confers standing in and of itself begs the question given the inquiry required by *Transunion*.  *See Rohl*, 2022 WL 1748244, at *3.  Accordingly, the Court finds that neither argument provides a proper basis for concreteness and turns to Plaintiff's additional arguments that address *Transunion*.[3]

Plaintiff next argues that the harm here resembles common law fraud, a harm "traditionally recognized as providing a basis for lawsuits in American courts."  *See* Pl. Br. at 22; *Transunion*, 141 S. Ct. at 2204.  Consequently, Plaintiff avers that his reliance on the misleading information in the Letter satisfies the comparison to this historical analogue.  Pl. Br at 25.  To support this contention, Plaintiff argues that the relationship between the harm at issue here and the historical analogue need only be "close in kind, but not degree."  *Id.*  Therefore, Plaintiff argues, his confusion concerning the amount of the debt, the party to whom the debt was owed, and whether the Defendant was indeed the debt collector led to an inability to make an informed decision on payment that is similar in kind to common law actions for fraud—even if not similar in degree.  *Id.*  In response, Defendant argues there is no such historical analogue to the informational injury claims made by Plaintiff.  *See* Def. Reply at 5.

---

[3] To the extent Plaintiff argues that *Transunion* does not alter the standing analysis because it was limited to procedural violations of FCRA—in contrast to the purported substantive violations of FDCPA at issue here—that argument misinterprets *Transunion*, which provided guidance for intangible harms, generally, in addition to ruling on the specific FCRA claims at issue.  141 S. Ct. at 2204-05.  Moreover, even accepting the substantive-procedural distinction as Plaintiff frames it, "*TransUnion* suggests that it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury." *Kola v. Forster & Garbus LLP*, No. 19-cv-10496, 2021 WL 4135153, at *8 (S.D.N.Y. Sep. 10, 2021).

Applying the *Transunion* framework, this Court finds that Plaintiff has alleged a proper common-law analogue but has not established that the harms here bear a close enough relationship to it. *See Rohl*, 2022 WL 1748244, at *3. As an initial matter, deceptive debt collection practices and misleading or inaccurate information bear a preliminary kinship to common-law fraud or fraudulent misrepresentation. *See, e.g., id.* at *4 (treating "fraudulent misrepresentation" as common law analogue of FDCPA claim); *Wolkenfeld*, 2022 WL 1124828, at *3 (using "fraudulent or negligent misrepresentation" as analogue for FDCPA claim); *Kola*, 2021 WL 4135153, at *6 (same). Both drive the recipient of false information towards a decision or action he would not otherwise take if not for the misrepresentation or falsity. *See Thomas v. Youderian,* 232 F. Supp. 3d 656, 662 (D.N.J. 2017). And indeed, as Plaintiff contends, *Transunion* does not require "an exact duplicate" of the common law analogue.[4] 141 S. Ct. at 2209. However, even if the harm need only be similar in kind (but not degree), Plaintiff must at least allege some form of reliance. *See, e.g., Rohl*, 2022 WL 1748244, at *4 (finding no standing in FDCPA deception claim because "Complaint fails to plausibly allege that [plaintiff] relied on [defendant's] representation"); *Kola*, 2021 WL 4135153, at *4 ("[M]erely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance."). "Adequacy of informational harms for standing purposes therefore turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter." *Huber v. Simon's Agency*

---

[4] Insofar as Plaintiff relies extensively on *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,* 17 F.4th 1016, 1027 (11th Cir. 2021), *reh'g en banc granted, opinion vacated,* 17 F.4th 1103 (11th Cir. 2021), *see* Pl. Br. at 23-26, the Court notes that this out-of-circuit case is persuasive authority only. Therefore, the fact that it had been vacated pending rehearing *en banc* days before Plaintiff filed his brief does not necessarily affect its persuasiveness, as it was not—and will not be once reheard *en banc*—binding upon this Court.

*Inc.,* No. 19-01424, 2022 WL 1801497, at *4 (E.D. Pa. June 2, 2022) (finding standing because Plaintiff's failure to respond to debt collection letter resulted in actual financial consequences).

Here, Plaintiff has failed to allege sufficient facts resembling common-law fraud's element of detrimental reliance. Plaintiff argues that his reliance consisted of his confusion "about basic information about the debt," his resulting inability "to evaluate his options of how to handle this debt," and the "time, money, and effort [spent] in determining the proper course of action." Pl. Br. at 25-26; Compl. ¶¶ 47, 51, 53. But "confusion itself is not enough." *Id.; see also Ward v. Natl. Patient Account Services Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) ("[C]onfusion alone is not a concrete injury for Article III purposes."). Further, inability to evaluate response options or spending time and money determining the proper course of action are essentially extensions of this initial confusion that do not amount to concrete harms. *See Wolkenfeld*, 2022 WL 1124828 at *2 (rejecting that plaintiff's allegations—including that he "was unable to evaluate his options of how to handle his debt" and that he "expended time and money in determining the proper course of action"—were concrete injuries). Indeed, these harms "are not sufficiently concrete unless they are inextricably bound up in a cognizable injury, such as where a plaintiff faces a *sufficient risk of harm*, *and then* spends time, money, and effort mitigating that risk." *Id.* (cleaned up) (emphasis in original). However, Plaintiff has offered no such risk of additional harm bound up with receipt of this Letter (outside of the confusion just discussed). Moreover, insofar as Plaintiff alleges he "would have pursued a different course of action were it not for Defendants' statutory violations," Compl. ¶ 52, he fails to allege what specifically he would have done differently, or that his actual course of action (which Plaintiff also does not specify) resulted in any harm. *See Huber,* 2022 WL 1801497, at *4 (finding Plaintiff's inability to respond led to actual "financial consequences"). In

sum, Plaintiff's claim lacks a sufficiently close relationship to its historical analogue of common-law fraud because he has not adequately pleaded facts resembling its reliance element.

Finally, Plaintiff's argument that the time, money, and effort spent determining the proper response to the Letter constituted tangible harms must also be rejected for multiple reasons. *See* Pl. Br. at 26. Putting aside the fact that Plaintiff offers no semblance of specificity concerning these claims,[5] Plaintiff's argument relies exclusively on cases decided prior to *Transunion*. *See id.* (citing *Healthsource, Inc. v. Advanced Data Sys. Int'l, LLC*, No. 16-3620, 2020 WL 2764826 (D.N.J. May 27, 2020), *Cottrell v. Alcon Labs.*, 874 F.3d 154 (3d Cir. 2017), and *Fair Hous. Council v. Montgomery Newspapers*, 141 F.3d 71 (3d Cir. 1998)). However, as discussed above, after *Transunion* these cannot amount to concrete harms unless "bound up in a cognizable injury." *Cavazzini v. MRS Associates*, 2021 WL 5770273, at *7 (E.D.N.Y. Dec. 6, 2021). That is, if Plaintiff has not established a sufficient risk of harm from the misrepresentations of the Letter itself (which he has not), efforts to mitigate that risk do not constitute concrete harm. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021). Moreover, to the extent this claim alleges harm via the fees and efforts of litigation, it is well settled that "the burdens of bringing a lawsuit cannot be the sole basis for standing." *Cavazzini*, 2021 WL 5770273, at *7 (E.D.N.Y. Dec. 6, 2021); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) ("[R]eimbursement of the costs of litigation cannot alone support standing."). Accordingly, Plaintiff's harms constitute neither intangible nor tangible harms that satisfy the requisite concreteness standard.

---

[5] Notably, the analogue to Plaintiff's claim here—fraud—typically requires heightened specificity in its pleadings. *See, e.g.,* Fed. R. Civ. P. 9(b); N.J. Ct. R. 4:5-8(a).

## V.      <u>**CONCLUSION**</u>

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 4) is granted and Plaintiff's complaint is dismissed without prejudice. An appropriate Order accompanies this Opinion.

**DATED**:   June __24th__, 2022

<i>s/ Claire C. Cecchi</i>

**CLAIRE C. CECCHI, U.S.D.J.**